```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW HAMPSHIRE
```

Johnny Lee Chavis

    v.                                    Civil No. 19-cv-488-LM
                                           Opinion No. 2020 DNH 038
Robert Hazlewood, Warden, Federal
Correctional Institution, Berlin


**O R D E R**

    Johnny Lee Chavis, an inmate at the Federal Correctional Institution in Berlin, New Hampshire ("FCI Berlin"), has filed a petition for a writ of habeas corpus (doc. no. 1) under 28 U.S.C. § 2241, seeking to have a disciplinary record for possessing a "hazardous tool" (a cellphone) expunged, and to restore the good conduct time he lost as a sanction for that violation. Before the court is the respondent FCI Berlin Warden's motion for summary judgment (doc. no. 8). Mr. Chavis has filed an objection (doc. no. 10) to that motion, along with an exhibit to that objection, see Decl. of Johnny Lee Chavis, Feb. 20, 2020 (doc. no. 16) ("Chavis Decl.").


**Summary Judgment Standard**

    "Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Walker v.

President & Fellows of Harvard Coll., 840 F.3d 57, 61 (1st Cir. 2016) (citations and internal quotation marks omitted).  In general, the evidence is "viewed in the light most favorable to the nonmoving party . . . and all reasonable inferences must be taken in that party's favor."  Harris v. Scarcelli (*In re* Oak Knoll Assocs.), 835 F.3d 24, 29 (1st Cir. 2016).  As petitioner is proceeding pro se, his pleadings are construed liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

To obtain summary judgment, "the moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party."  Celotex Corp. v. Catrett, 477 U.S. 317, 332 (1986).  Once the moving party makes the required showing, "'the burden shifts to the nonmoving party, who must, with respect to each issue on which [it] would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in [its] favor.'"  Flovac, Inc. v. Airvac, Inc., 817 F.3d 849, 853 (1st Cir. 2016) (citations omitted).

"This demonstration must be accomplished by reference to materials of evidentiary quality," and that evidence must be "'significantly probative,'" and "more than 'merely colorable.'"  Id. (citations omitted).  The nonmoving party's failure to make the requisite showing "entitles the moving party to summary judgment."  Id.

**Undisputed Facts**

On August 9, 2018 at approximately 6:10 p.m., a corrections officer at FCI Fort Dix in New Jersey conducted a search of the cell Mr. Chavis shared with eleven other inmates, while Mr. Chavis was not there. See Pet. (Doc. No. 1, at 5, 7); Chavis Decl. (Doc. No. 16, at 2). Behind the locker assigned to Mr. Chavis, the officer found a cellphone and charger plugged into an outlet on the wall. Pet. (Doc. No. 1, at 5, 7). The phone was magnetized to the back of Mr. Chavis's locker and was concealed by hanging shirts.[1] Id.

Mr. Chavis learned about the cellphone's discovery from his cellmate Dereck Berryan when Mr. Chavis returned to his cell. Chavis Decl. (Doc. No. 16, at 2). Mr. Berryan said, in the presence of another cellmate, Darnell Dubose, that Mr. Berryan would take ownership of the phone. Id. Mr. Chavis told the investigating officer that the phone was Mr. Berryan's. Id. Mr. Berryan, whose end-of-sentence release date was scheduled for August 16, 2018 -- one week after the cellphone's discovery --

---

[1]The respondent's motion for summary judgment asserts, as part of an argument regarding the sufficiency of the evidence, that the clothes covering the cellphone were Mr. Chavis's. Resp't's Mot. for Summ. J. (Doc. No. 8, at 3). This court does not deem that assertion to be undisputed for purposes of ruling on the motion for summary judgment, as neither respondent's statement of undisputed facts, nor the disciplinary hearing record, contains any assertion or finding regarding who owned the shirts that had been hung over the cellphone.

3

hand-wrote a statement which states that he left the phone to charge behind the locker when Mr. Chavis was out. See Ex. to Bureau of Prisons ("BOP") Incident Report (Doc. No. 8-1, at 7). Surmising, in light of Mr. Chavis's risk of being transferred to another facility and Mr. Berryan's imminent release, that Mr. Chavis and Mr. Berryan had colluded to assign responsibility for the phone and the incident report to Mr. Berryan, the investigating officer charged Mr. Chavis with possessing a "hazardous tool" (the cellphone), in violation of the prison's rules. See BOP Incident Report (Doc. No. 8-1, at 6). Mr. Chavis has filed a sworn statement indicating he asked for an examination of the cellphone's contents to prove that the phone could not be associated with him, see Chavis Decl. (Doc. No. 16, at 3), but there is no record suggesting that such an examination occurred.

On August 12, 2018, three days after the cellphone was found, another corrections officer, inventorying Mr. Chavis's clothes, found a pair of shorts that had been altered to contain a sewn-in pouch in the crotch. Email, Aug. 12, 2018 (Doc. No. 8-1, at 20). The officer referred to that alteration as a "phone pouch" in an email that was made part of the record in Mr. Chavis's disciplinary proceedings. Doc. No. 8-1, at 20. Mr. Chavis has stated, without any evidentiary support, that the pouch was 2" x 2", a size he considered to be too small to hide a

4

phone, and that he used it for stamps.  Pet'r's Obj. to Summ. J. (Doc. No. 10, at 3).

The cellphone possession charge was referred for further proceedings before a disciplinary hearing officer ("DHO").  See BOP Incident Report (Doc. No. 8-1, at 5).  Mr. Chavis received prior notice of his rights to present evidence, call witnesses, and have a staff representative assist him at that hearing.  Id.  Mr. Chavis declined staff representation.

At the disciplinary hearing on August 15, 2018, Mr. Chavis testified that the cellphone was Mr. Berryan's, and he presented the hand-written statement of Mr. Berryan as evidence.  See DHO Report, Aug. 15, 2018 (Doc. No. 8-1, at 14-15).  Mr. Chavis also called his cellmate, Mr. Dubose, as a witness; Mr. Dubose testified that he had heard Mr. Berryan say it was Mr. Berryan's phone.  Id.

The DHO found that Mr. Chavis violated prison rules by possessing the cellphone.  The DHO based this conclusion on: where the cellphone was found, behind Mr. Chavis's locker and covered by shirts; each inmate's responsibility to ensure that his or her assigned area is free of unauthorized items, leading the DHO to conclude that Mr. Chavis was aware of the cellphone; the contemporaneous discovery that Mr. Chavis's belongings included shorts with a sewn-in pouch that could conceal

contraband; and Mr. Chavis's disciplinary history of having possessed a cellphone in violation of prison rules in the year before the incident in question. Id. at 16. The DHO refused to credit as true the inmates' testimony about Mr. Berryan owning the phone, and the DHO did not find Mr. Berryan's handwritten confession to be persuasive on that issue, finding that, facing imminent release, Mr. Berryan had "nothing to lose" by taking responsibility for the incident report, while Mr. Chavis, at risk of a transfer to a higher security prison, had "everything to lose" if he were found guilty of the rules violation. Id. at 15. The DHO imposed a sanction upon Mr. Chavis of forty-one days loss of good conduct time, upon finding that the cellphone was a safety risk which could be used to circumvent security protocols. Id. at 16.

Mr. Chavis's declaration states that he asked to have the cellphone's contents analyzed, and that the DHO told him that the phone would be "sent out," Chavis Decl. (Doc. No. 16, at 3). The DHO Report does not record that those statements were made. It is undisputed that a record of the phone's contents was not produced, obtained, or reviewed in connection with the pertinent disciplinary proceedings. See Pet'r's Surreply (Doc. No. 14, at 2).

**Discussion**

I.  Due Process and Disciplinary Proceedings

The minimum due process requirements for prison disciplinary hearings affecting good time credits are: written notice of the charge, the ability to call witnesses and present documentary evidence (when doing so is consistent with institutional safety and correctional concerns), a hearing before an impartial decisionmaker, and a written statement as to the evidence relied on and the reasons for the DHO's decision. See Surprenant v. Rivas, 424 F.3d 5, 16 (1st Cir. 2005); see also Wolff v. McDonnell, 418 U.S. 539, 564-66 (1974). In addition, due process requires that the decision be supported by "some evidence"; the relevant question "is whether there is any evidence in the record that could support the [DHO's] conclusion." Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455-56 (1985). "[J]udicial review in a habeas case must not amount to a reevaluation of the prison's disciplinary determination, but is limited 'to ensur[ing] that federal constitutional guarantees of due process are observed in the proceedings.'" Cipriano v. Fed. Bureau of Prisons, No. 17-377WES, 2017 U.S. Dist. LEXIS 215112, at *24, 2018 WL 400768, at *8 (D.R.I. Dec. 6, 2017) (citation omitted), R&R approved, 2018 U.S. Dist. LEXIS 6013, 2018 WL 400768, at *1 (D.R.I. Jan. 12, 2018).

II. Claim of Violation of BOP Policy and Equal Protection Rights

Mr. Chavis contends that the DHO and the investigating officer violated his federal rights and BOP policy, by singling him out for disciplinary proceedings with respect to contraband found in an area he asserts all twelve inmates in his cell could access. The current version of the cited BOP policy states that inmates are responsible for keeping their assigned areas clear of contraband. See BOP Program Statement 5270.09, Inmate Discipline Program, App'x C, Inmate Responsibilities, ¶ 4 (available at https://www.bop.gov/resources/policy_and_forms.jsp (last visited Mar. 11, 2020)). Mr. Chavis's citation to BOP policy appears intended to challenge the failure of prison officials to make all of the inmates who shared his cell responsible for possessing the cellphone found outside his locker. Assuming, without deciding, that Mr. Chavis raised the issue of multiple inmates having equal access to the phone's location as a defense in the disciplinary hearing, that fact alone does not give rise to a viable due process challenge to Mr. Chavis's loss of good conduct time.

> Courts that have considered this question have uniformly held that the discovery of contraband in a shared cell constitutes "some evidence" of possession sufficient to uphold a prison disciplinary sanction against each inmate in the cell, including depriving that inmate of his or her liberty interest in good time credits.

8

Denny v. Schultz, 708 F.3d 140, 145 (3d Cir. 2013); see also Flowers v. Anderson, 661 F.3d 977, 980-81 (8th Cir. 2011) (relying on collective responsibility theory in concluding that two of eight cellmates were culpable for contraband found in their shared living area "that could be accessed by standing on a locker"); Hamilton v. O'Leary, 976 F.2d 341, 345-46 (7th Cir. 1992) (applying probability-based approach to find "some evidence" sufficient to uphold loss of good time where weapons were found within a cell "under the control of [petitioner] and his three cellmates," giving rise to a "25% chance of guilt," while questioning in dicta whether the 3.1% individual probability of guilt as to contraband found in a vent connected to a network of cells, to which thirty-two inmates had access, would amount to sufficient evidence under Hill, 472 U.S. at 457).

The DHO in Mr. Chavis's case, like the hearing officers in other cases where contraband has been found within a cell affixed to the outside of a locker or drawer holding that inmate's belongings, specifically found that it was reasonable that Mr. Chavis was aware of and in fact possessed that phone, in violation of prison rules, given that there were shirts hanging over the cellphone, it was attached to the back of Mr. Chavis's assigned locker, and prison policy required all inmates to keep their assigned area free of contraband. See DHO Report (Doc. No. 8-1, at 16); see also Donahue v. Grondolsky, 398 F. App'x 767,

772 (3d Cir. 2010) ("the fact remains that [the SIM card] was found taped to the back of [petitioner's] bottom clothes drawer," and the petitioner did not dispute "the reasonableness of the requirement that inmates keep their assigned area free of contraband"); Ned v. Tatum, No. 15-cv-178-LM, 2017 WL 3822736, at *5, 2017 U.S. Dist. LEXIS 139885, at *13 (D.N.H. May 16, 2017) ("once the weapon was affixed to Ned's locker, he became responsible for it"), R&R approved, 2017 WL 3772656, 2017 U.S. Dist. LEXIS 139426 (D.N.H. Aug. 29, 2017). Those findings in Mr. Chavis's case amount to "some evidence" sufficient to satisfy the due process requirements set forth in Hill, 472 U.S. at 455-56, particularly when coupled with other evidence cited in the DHO Report, including that Mr. Chavis's shorts with a sewn-in pocket could carry a phone or other contraband, and his relatively recent prior disciplinary history of cellphone possession.

Mr. Chavis labels his claim of being singled out for disciplinary proceedings as an equal protection claim, see Pet. (Doc. No. 1, at 4), but he points to nothing suggesting that, compared with any similarly-situated inmates, he suffered discrimination because of his membership in any group or class of individuals, or because he had exercised his federal rights. See generally Mulero-Carrillo v. Román-Hernández, 790 F.3d 99, 106 (1st Cir. 2015) (elements of equal protection claim). And he offers nothing to contradict the DHO Report's finding that there

10

was "no evidence of any animosity toward you," DHO Report (Doc. No. 8-1, at 15), or to suggest that malice or bad faith motivated the disciplinary proceedings. Absent such evidence, the respondent Warden is entitled to judgment as a matter of law on that claim, as well.

III. Procedural Due Process Claim Regarding Cellphone Contents

Mr. Chavis contends that his procedural due process rights were violated when he requested, but did not receive, evidence regarding the cellphone's contents. Mr. Chavis argues that the cellphone's data would have shown that none of his (known) contacts, numbers, emails, or pictures were in the phone.[2] Mr. Chavis has submitted a document showing that the BOP has undertaken such investigations in other cases involving

---

[2]Although Mr. Chavis argues that evidence of the phone's contents could have proven the phone was not his, such evidence would not preclude the finding that he violated prison rules by "possessing" the phone. See Bachelder v. Patton, No. 06-CV-148-HRW, 2007 WL 108415, at *9, 2007 U.S. Dist. LEXIS 3145, at *24-*25 (E.D. Ky. Jan. 12, 2007) (inmate's "possess[ion]" of cellphone could be found even if his "list of approved telephone numbers revealed no match to any number dialed to or from the contraband cell phone found in his area"). See also Donahue v. Grondolsky, 398 F. App'x 767, 772 (3d Cir. 2010) (contents of SIM card was not material, exculpatory evidence in disciplinary hearing regarding charge of unauthorized possession of SIM card, as "verifying the cellular phone number assigned to it and/or revealing the list of calls made and received would not have exonerated [petitioner] of possession of contraband").

11

cellphones.  See Ex. to Pet'r's Obj., BOP Incident Report, May 24, 2019 (Doc. No. 10, at 6).

In Ned, a case like Mr. Chavis's, an inmate charged with possession of a weapon that had been found attached to the bottom of his locker claimed in his disciplinary hearing that he had been set up by an unknown inmate, and he asserted in his § 2241 petition that he asked the DHO to have the weapon and locker checked for fingerprints to identify who planted it.  The court found no procedural due process violation in the prison's failure to undertake further investigations of the ownership of the weapon that was found under the inmate's locker in Ned.  See Ned, 2017 WL 3822736, at *3, 2017 U.S. Dist. LEXIS 139885, at *9.  Citing Tenth Circuit cases,³ the court in Ned, 2017 WL 3822736, at *4, 2017 U.S. Dist. LEXIS 139885, at *9, concluded that the inmate's due process claim was unavailing under Wolff and Hill, 472 U.S. at 454.

---

³Ned quotes Whitmore v. Jones, 490 F. App'x 122, 125 (10th Cir. 2012), for the proposition that "'the opportunity to present documentary and other evidence has never been extended to require prison officials to gather [review] or preserve evidence that a prisoner may later find helpful.'"  Ned, 2017 WL 3822736, at *4, 2017 U.S. Dist. LEXIS 139885, at *9.  Ned also quotes Abdulhaseeb v. Ward, 173 F. App'x 658, 661 (10th Cir. 2006), which "reject[ed] petitioner's claim that 'prison officials violated his due process rights by failing to . . . conduct an independent investigation to discover exculpatory and mitigating evidence on his behalf.'"  Ned, 2017 WL 3822736, at *4, 2017 U.S. Dist. LEXIS 139885, at *9.

> Indeed, in a case in which a prisoner asserted, in a § 2241 petition, "that prison officials erred by failing to conduct a laboratory test to determine whether the doctored soda can found in his room was actually used to smoke marijuana," Rhatigan v. Ward, 187 F. App'x 889, 890-91 (10th Cir. 2006), the court of appeals disagreed, holding that "[u]nder Hill, this is not a due process violation," id. at 891. So too, here.

Ned, 2017 WL 3822736, at *4, 2017 U.S. Dist. LEXIS 139885, at *9.

Similarly, in Bridgeman v. Ault, No. 98-3681SI, 187 F.3d 640, 1999 U.S. App. LEXIS 13168, 1999 WL 425834 (8th Cir. 1999) (unpublished table decision), the court considered whether a petitioner's procedural due process rights had been violated when prison officials refused his requests during the disciplinary proceedings to conduct a polygraph, fingerprint analysis, and drug test to show that a coffee cup holding marijuana found in the common area of his cell did not belong to the petitioner. As in Ned, the court in Bridgeman concluded that the right to present documentary evidence did not encompass a right to compel prison officials to conduct those supplemental investigations and analyses, to generate new evidence at the inmate's behest. See Bridgeman, 1999 U.S. App. LEXIS 13168, at *3-*4, 1999 WL 425834, at *1-*2.

In support of his argument that the phone's contents should have been examined, produced, and reviewed in the disciplinary proceedings, Mr. Chavis cites Lennear v. Wilson, 937 F.3d 257 (4th Cir. 2019), in which the court held that the procedural due

13

process right to present documentary evidence under Wolff, 418 U.S. at 566, is applicable to an inmate's request that prison officials produce and review a surveillance video in connection with his or her disciplinary proceedings. See Lennear, 937 F.3d at 262 ("inmates at risk of being deprived of a liberty interest, like good time credits, have a qualified right to obtain and present video surveillance evidence" (citing Wolff)).[4] Lennear is readily distinguishable, however, as that case concerned a record (a video) which would have been routinely generated and maintained by the prison for a period of time in the regular course of its business. To produce and review the video evidence in the disciplinary hearing, prison officials did not need to undertake any additional forensic analysis of contraband or otherwise generate previously unavailable evidence; officials in that case only had to identify and turn over the pertinent part of an available existing record that had been in the prison's possession. Those facts make Mr. Chavis's case distinguishable from Lennear, and comparable to Ned and other cases where the right to present documentary evidence is not equated with a right

---

[4]The Tenth Circuit, in Howard v. U.S. Bureau of Prisons, 487 F.3d 808 (10th Cir. 2007), has also held that the BOP's "refusal to produce and review" a potentially exculpatory surveillance video, upon an inmate's request during his disciplinary proceedings, violates the inmate's "due process right to present documentary evidence in his own defense." Id. at 815.

14

to compel investigations to generate new evidence, thus warranting a result here that is the same as that in Ned: namely, an order granting summary judgment in respondent's favor on Mr. Chavis's procedural due process claim regarding the cellphone contents.

IV. Remaining Due Process Claims

Mr. Chavis claims that his due process rights were violated when the DHO did not give due weight to evidence that the cellphone found in his cell belonged to Mr. Berryan. The requirement under Hill that the disciplinary conviction be supported by "some evidence," however, does not require the examining court to independently assess the credibility of witnesses or reweigh the evidence. Hill, 472 U.S. at 455. "Instead the relevant question is whether there is any evidence in the record that could support the [DHO's] conclusion." Id.

In Mr. Chavis's case, the DHO had sound reasons for discrediting the evidence assigning responsibility for the phone to Mr. Berryan, and for suspecting that the inmates had colluded -- the relatively low risk of harm to Mr. Berryman that could result from the incident report as compared to Mr. Chavis, due to Mr. Berryan's imminent release date and Mr. Chavis's risk of being transferred to a higher security facility. While Mr.

Chavis argues here that Mr. Berryan put himself at great risk of loss when he admitted to owning the phone, because he could have been charged criminally for owning a cellphone in prison, there is no evidence before this court suggesting that Mr. Chavis raised that issue before the DHO during the evidentiary hearing. This court is not required to second-guess the DHO's credibility determination on that basis.

Furthermore, even if the DHO had taken as true the evidence indicating Mr. Berryan owned the phone, there would still be some evidence in the record before the DHO to support the finding that Mr. Chavis "possessed" the cellphone. See Ned, 2017 WL 3822736, at *5, 2017 U.S. Dist. LEXIS 139885, at *13 (because of prison "policy that makes inmates responsible for keeping their assigned areas free" of contraband, "once the weapon was affixed to Ned's locker, he became responsible for it"). Accordingly, the respondent Warden's motion for summary judgment on the due process/credibility claim is properly granted.

In all other respects, Mr. Chavis has failed to show that there is a genuine factual dispute as to whether he suffered any due process violation in the disciplinary proceedings. He received a written statement of the charges and timely prior notice of his hearing. He was able to testify, present a written statement of Mr. Berryan, and call a witness to corroborate that statement. After the hearing, the DHO issued a written decision

justifying the loss of good conduct time, in which the DHO credited the incident report as true and made a reasoned decision discrediting the evidence suggesting Mr. Berryan owned the phone. Cf. Hartsfield v. Nichols, 511 F.3d 826, 831 (8th Cir. 2008) ("report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence'").

## Conclusion

Judgment is properly entered as a matter of law on each claim in Mr. Chavis's § 2241 petition. Accordingly, the court GRANTS the Warden's motion for summary judgment (doc. no. 8). The clerk's office is directed to enter judgment and close the case.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

March 18, 2020

cc: Johnny Lee Chavis, pro se
    Seth Aframe, Esq.